UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MEGAN R. MCGOWIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11CV1927 LMB |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This is a proceeding under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the application of Megan R. McGowin for disabled adult child benefits under Title II of the Social Security Act, and Supplemental Security Income under Title XVI of the Act. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff has filed a Brief in Support of Complaint (Document Number 18), defendant has filed a Brief in Support of the Answer (Doc. No. 23), and plaintiff has filed a Reply (Doc. No. 26).

## Procedural History

On March 31, 2009, plaintiff filed her application for benefits, claiming that she became unable to work due to her disabling condition on June 30, 2006. (Tr. 113-26). Plaintiff's claim was denied initially and, following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated September 13, 2011. (Tr. 32-34,

51-60, 36-50). Plaintiff filed a request for review with the Appeals Council of the Social Security Administration (SSA), which was denied on October 12, 2011. (Tr. 4, 1-3). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

**Evidence Before the ALJ**

**A.     ALJ Hearing**

Plaintiff's administrative hearing was held on January 20, 2011. (Tr. 7). Plaintiff was present and was represented by counsel. (Id.). Also present was vocational exert Margaret Kelsey, and medical expert Kweli J. Amusa, M.D. (Id.).

The ALJ examined plaintiff, who testified that she lived in a "house trailer" in Jerome, Missouri. (Tr. 10). Plaintiff stated that she lived with her boyfriend and her boyfriend's daughter. (Id.).

Plaintiff testified that she was twenty-three years of age and had a tenth grade education. (Tr. 11). Plaintiff stated that she has tried unsuccessfully to obtain her GED. (Id.).

Plaintiff testified that she has worked operating a plastic injection mold machine. (Tr. 12). Plaintiff stated that she performed this position for approximately six months. (Id.). Plaintiff stated that she left this position because she did not enjoy working in a factory. (Id.).

Plaintiff testified that she worked as a paperwork assistant in a flu clinic on a part-time basis. (Id.).

Plaintiff stated that she became disabled in 2006 as a result of an automobile accident in which her vehicle flipped several times. (Id.). Plaintiff testified that she worked up until the

accident. (Id.). Plaintiff stated that she was working at the flu clinic when the accident occurred. (Id.).

Plaintiff stated that her last job was working in a fast food restaurant for two months in 2008. (Tr. 13). Plaintiff testified that she left this position because she was unable to keep up with the work due to the standing and mopping involved. (Id.).

Plaintiff stated that she sustained a fracture of the vertebral column as a result of the automobile accident. (Tr. 14). Plaintiff testified that she is unable to work due to her back problems and problems with her right leg. (Id.).

The ALJ next examined medical expert, Dr. Amusa, who testified that she was board certified in internal medicine. (Tr. 15). Dr. Amusa summarized the medical evidence of record. (Tr. 15-17). Dr. Amusa testified that plaintiff was involved in a severe roll-over automobile accident on June 30, 2006, which resulted in fractures of the vertebral body from L2 and L3. (Id.). Dr. Amusa stated that plaintiff underwent surgery to stabilize this fracture, and that the fragmented material and bony fragments were removed to stabilize her spine. (Tr. 16). Dr. Amusa testified that the examination of the consultative orthopedist was fairly unremarkable. (Id.). Dr. Amusa noted that the most recent medical records were dated June 10, 2009. (Tr. 17).

The ALJ questioned plaintiff, who testified that she had not seen a doctor recently because she could not afford care. (Id.). Plaintiff stated that she had an application for Medicaid pending at the time of the hearing. (Id.).

Plaintiff testified that she only takes over-the-counter ibuprofen for pain relief. (Id.).

Plaintiff stated that the ibuprofen helps her pain "some days." (Id.). Plaintiff testified that she also takes long, warm baths to ease her pain. (Id.). Plaintiff stated that she constantly massages her right leg and changes positions frequently to decrease her pain. (Id.).

Plaintiff testified that she experiences pain in her low back and her right leg. (Tr. 18). Plaintiff stated that her back pain is usually worse than her leg pain, although it varies from day-to-day. (Id.). Plaintiff testified that she tries to keep weight off of her right side when she sits. (Id.).

Plaintiff stated that the consultative examiner told her that her right leg pain was caused by a sciatic nerve. (Tr. 19).

Plaintiff testified that she has not undergone surgery to replace a broken screw because she was unable to afford an MRI. (Id.). Plaintiff stated that she would like to undergo surgery when she obtains insurance. (Id.).

The ALJ then re-examined Dr. Amusa, who testified that sciatica does not necessarily occur as a result of undergoing fusion surgery. (Id.). Dr. Amusa stated that patients who have never undergone surgery may suffer from intermittent sciatic-type pain. (Tr. 20). Dr. Amusa explained that the sciatic nerve is a large nerve that travels in the lower portion of the back on either side and up to each leg. (Id.). Dr. Amusa stated that, for whatever reason, patients can experience inflammation or irritation of the sciatic nerve, resulting in "difficult pain." (Id.).

Plaintiff's attorney examined Dr. Amusa, who testified that a CT scan revealed some bulging at L5/S1, without impinging significantly into the spinal canal or spinal nerve. (Id.). Dr. Amusa stated that this could change over time. (Id.).

Dr. Amusa testified that it is possible to experience problems in disc spaces adjacent to the fusion as a complication of fusion surgery. (Tr. 21).

Dr. Amusa stated that plaintiff sustained a mid-clavicular fracture. (Tr. 22). Dr. Amusa testified that these fractures are fairly common and usually heal well. (Id.).

Plaintiff's attorney next examined plaintiff, who testified that her back pain is constant and varies in severity. (Tr. 23). Plaintiff stated that her back pain is usually about a seven on a scale of zero to ten. (Id.).

Plaintiff testified that she experiences occasional pain in her right leg, which goes from her hip down into her knee. (Tr. 24). Plaintiff stated that her leg pain is sharp and tingly. (Id.). Plaintiff testified that she experiences leg pain at least three times a week, and that it lasts from a few minutes to multiple hours. (Id.). Plaintiff rated her leg pain as a five to six. (Id.).

Plaintiff testified that she would like to undergo surgery to repair the screw to ease her pain and possibly return to work, but she does not have medical benefits. (Tr. 25).

Plaintiff stated that she has studied for the GED exam, but has never taken the test. (Id.).

The ALJ next examined the vocational expert, Margaret Kelsey, who testified that none of plaintiff's past positions qualify as substantial gainful activity based on her earnings, although plaintiff has learned skills at her past positions. (Tr. 26). Ms. Kelsey stated that plaintiff has worked as a cashier stocker (light, semi-skilled); fastfood worker (light, unskilled); plastic injection machine tender (light, unskilled); and waitress/dishwasher (medium, unskilled). (Tr. 27).

Ms. Kelsey testified that an individual who was unable to utilize both hands would be

unable to perform light work or sedentary unskilled work.  (Tr. 30).

**B.      Relevant Medical Records**

The record reveals that plaintiff presented to Phelps County Regional Medical Center on June 30, 2006, after being involved in a roll-over automobile accident.  (Tr. 219).  Plaintiff underwent x-rays, which revealed a midclavicular fracture, and L2 and L3 compression fractures.  (Tr. 235, 238).  Plaintiff underwent a CT scan of the lumbar spine, which revealed burst fractures at L2 and L3 with retropulsion of bony fragments into the spinal canal at both levels, scoliosis, and disc bulges at L4-L5 and L5-S1.  (Tr. 240).  Plaintiff was transferred to St. John's Mercy Medical Center.

Plaintiff saw James J. Coyle, M.D. at St. John's Mercy Medical Center for an orthopedic consultation on July 1, 2006.  (Tr. 243-44).  Dr. Coyle's impression was L2 and L3 burst fractures with lower extremity weakness.  (Tr. 243).

On July 2, 2006, Dr. Coyle performed a left L3 decompression of the spinal canal and posterior spinal instrumentation and fusion at L1-L4.  (Tr. 272).

Plaintiff saw Dr. Coyle for follow-up on August 2, 2006, at which time plaintiff reported no significant complaints of back pain, although she had some residual right lower extremity pain.  (Tr. 301).  Upon examination, plaintiff had good motor strength and was able to squat and ambulate.  (Id.).  Plaintiff's x-rays looked "very good."  (Id.).  Dr. Coyle indicated that plaintiff should avoid bending, lifting, or impact activities.  (Id.).  He encouraged plaintiff to walk and to quit smoking.  (Id.).  On September 20, 2006, plaintiff had no complaints of pain.  (Tr. 299).  Plaintiff was able to forward flex without difficulty, and had "excellent" motor strength.  (Id.).

Plaintiff saw Bryan R. Troop, M.D. at St. John's Mercy Medical Center for follow-up on August 22, 2006. (Tr. 241). Dr. Troop noted that plaintiff was no longer using prescription analgesics for pain control, and had resumed driving a car. (Id.). Dr. Troop indicated that he no longer needed to see plaintiff, and that she would follow-up with Dr. Coyle. (Id.).

Plaintiff presented to Dr. Coyle on May 30, 2007, at which time plaintiff reported that she had been doing reasonably well until recently, when she picked up an infant and felt a pop in her back accompanied by right leg pain. (Tr. 297). Upon examination, plaintiff had right-sided paralumbar tenderness and numbness in the right lateral thigh. (Id.). Plaintiff was able to squat without difficulty, forward flex about eighty degrees, had trace to absent reflexes in the lower extremities, and no focal motor deficits. (Id.). An MRI of the lumbar spine revealed a new metallic screw fracture at L1. (Tr. 298). Plaintiff presented for follow-up on June 6, 2007, at which time she complained of right-sided paralumbar pain and lateral thigh pain. (Tr. 295). Dr. Coyle noted right paralumbar tenderness on examination. (Id.). Dr. Coyle indicated that the MRI revealed the canal to be adequately decompressed and a good reduction of the fracture. (Id.). Dr. Coyle recommended observing plaintiff's symptoms for about two months. (Id.). He prescribed Elavil.[1] (Id.). On August 1, 2007, plaintiff reported that the Elavil had relieved her right lower extremity pain. (Tr. 293). Upon examination, plaintiff had about forty degrees of flexion at the waist. (Id.). Plaintiff had minimal complaints of back pain and "excellent strength" in both lower extremities. (Id.). Plaintiff's x-rays looked "very good." (Id.). Dr. Coyle indicated that he would see plaintiff for follow-up only as needed. (Id.).

---

[1] Elavil is an antidepressant indicated for the treatment of mood disorders and nerve pain. See WebMD, http://www.webmd.com/drugs (last visited January 25, 2013).

Plaintiff presented to the emergency room at Phelps County Regional Medical Center on November 7, 2008, with complaints of chronic low back pain. (Tr. 281-83). Plaintiff was prescribed Vicodin[2] and Norflex.[3] (Tr. 283).

Plaintiff saw Barry Burchett, M.D. on June 10, 2009, for an orthopedic examination at the request of the state agency. (Tr. 286-91). Plaintiff complained of pain around the superior aspect of the scar at approximately T12, which was exacerbated by extreme bending. (Tr. 286). Plaintiff also complained of constant numbness of the right lateral thigh that had been present since the motor vehicle accident. (Id.). Plaintiff was not taking any medication for her back pain. (Id.). Plaintiff reported that she had not followed-up with Dr. Coyle because she was not able to afford the MRI he recommended. (Tr. 286). Upon examination, plaintiff ambulated with a normal gait, and appeared stable at station and comfortable in the supine and sitting positions. (Id.). Plaintiff's lower extremity examination revealed no tenderness, redness, warmth, or swelling. (Tr. 288). Plaintiff's straight leg raise testing was negative, and plaintiff had full range of motion of the spine. (Tr. 289). There was no significant tenderness or any spasm in the back. (Id.). Plaintiff was able to stand on one leg at a time without difficulty. (Tr. 288). Plaintiff was able to walk on the heels and toes, perform tandem gait, and squat without difficulty. (Tr. 289). Dr. Burchett noted a small strip of decreased light touch sensation in the right lateral thigh. (Id.). Otherwise, there was no evidence of neuropathy in the lower extremities. (Id.). Dr. Burchett

---

[2]Vicodin is indicated for the relief of moderate to moderately severe pain. See Physician's Desk Reference (PDR), 529 (63rd Ed. 2009).

[3]Norflex is indicated for the treatment of muscle spasms and pain. See WebMD, http://www.webmd.com/drugs (last visited January 25, 2013).

diagnosed plaintiff with chronic back pain status post lumbar surgery.  (Id.).

## **The ALJ's Determination**

The ALJ made the following findings:

1.  Born on August 7, 1987, the claimant had not attained age 22 as of June 30, 2006, the alleged onset date (20 CFR 404.102 and 404.350(a)(5)).

2.  The claimant has not engaged in substantial gainful activity since June 30, 2006, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: status post burst fracture of lumbar spine with fusion (20 CFR 404.1520(c)) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work a defined in 20 CFR 404.1567(b) and 416.967(b).

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on August 7, 1987, and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act,

    from June 30, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 41-46).

The ALJ's final decision reads as follows:

    Based on the application for a period of disability and disability insurance benefits filed on March 31, 2009, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

    Based on the application for supplemental security income filed on March 31, 2009, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 46).

## Discussion

**A.**  **Standard of Review**

    Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (citing Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993)). "[T]he court

must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141 F.3d 875, 878 (8th Cir. 1998). The analysis required has been described as a "searching inquiry." Id.

**B.      The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a). The claimant has the burden of proving that s/he has a disabling impairment. See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998). First, it is determined whether the claimant is currently engaged in "substantial gainful employment." If the claimant is, disability benefits must be denied. See 20 C.F.R. §§ 404.1520, 416.920 (b). Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c)), 416.920 (c)). To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities." Id. Age, education and work experience of a claimant are not considered in making the "severity" determination. See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of

the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). This listing is found in Appendix One to 20 C.F.R. 404. 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired. See 20 C.F.R. §§ 404.1520 (d), 416.920 (d). If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work. See 20 C.F.R. § 404.1520 (e), 416.920 (e). If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled. See id. If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

**C.**     **Plaintiff's Claims on Appeal**

Plaintiff first argues that the ALJ erred in assessing the credibility of plaintiff's subjective complaints of pain. Plaintiff also contends that the ALJ's RFC determination is inconsistent with the testimony of the vocational expert. The undersigned will discuss plaintiff's claims in turn.

1.      **Credibility Assessment**

Plaintiff argues that the ALJ erred in assessing the credibility of her subjective complaints of pain. Specifically, plaintiff contends that the ALJ erred in finding that her daily activities detracted from her credibility.

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998). Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. Id. The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

The court finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. "[T]he question is not whether [plaintiff] suffers any pain; it is whether she is fully credible when

she claims that [the pain] hurts so much that it prevents her from engaging in her prior work." Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).  Thus, the relevant inquiry is whether or not plaintiff's complaints that her pain is at a degree of severity that prevents her from working are credible.

In the present case, the ALJ properly pointed out the Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling pain. (Tr. 43-45).  The ALJ first discussed the medical evidence and found that it did not support plaintiff's subjective complaints.  (Tr. 43-44).  Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility.  See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

The ALJ noted that plaintiff's decompression and fusion surgery produced good results. (Tr. 42).  On plaintiff's August 2, 2006 follow-up with Dr. Coyle, plaintiff had no significant complaints of back pain, and she was encouraged to walk and to quit smoking.  (Tr. 42, 301).  On August 22, 2006, plaintiff reported to Dr. Troop that she was no longer using prescription analgesics for pain control, and had resumed driving a car.  (Tr. 42, 241).  On September 20, 2006, plaintiff had no complaints of any pain and her incision had nicely healed.  (Tr. 42, 299). Plaintiff was able to forward flex without difficulty and had excellent motor strength.  (Id.).  The ALJ noted plaintiff's report on May 30, 2007 that she felt a pop in her back after lifting an infant. (Tr. 43, 297).  The ALJ, however, pointed out that a lumbar MRI revealed that the canal was adequately decompressed with good reduction and healing of the fractures.  (Tr. 43, 295).  Dr.

Coyle recommended observing her symptoms for two months and prescribed Elavil for plaintiff's right leg pain. (Id.). On August 1, 2007, plaintiff reported that her right leg pain had resolved with medication, and she had minimal complaints of back pain. (Tr. 43, 293). Plaintiff had excellent strength in both lower extremities, and lumbar x-rays indicated stable postoperative changes. (Id.). Plaintiff was released from care. (Id.). The ALJ noted that consultative orthopedist Dr. Burchett examined plaintiff on June 10, 2009, and noted few abnormalities. (Tr. 43, 286-91).

The ALJ also discussed the testimony of the medical expert, Dr. Amusa. (Tr. 44). The ALJ noted Dr. Amusa's testimony that Dr. Burchett's examination was unremarkable, with no evidence of muscle spasm or tenderness. (Tr. 44, 16). Dr. Amusa pointed out that, although plaintiff complained of pain down her right leg, there was no sign of atrophy or decreased size in any of her muscles in her extremities, she was able to walk on her heels and toes, and her neurologic exam was unremarkable. (Id.). Dr. Amusa agreed with plaintiff's attorney that an MRI revealed disc bulging at L5-S1, but noted that there was no evidence of impingement. (Tr. 44, 20). The ALJ indicated that he was assigning the findings of Dr. Amusa significant weight, as they were consistent with the overall evidence and they were considered in determining plaintiff's residual functional capacity.

The ALJ pointed out that plaintiff did not seek care from August 1, 2007, her last visit with Dr. Coyle, until November 7, 2008, at which time she sought emergency room treatment for back pain. (Tr. 43). Plaintiff received no other medical care, aside from her consultative orthopedic examination, through the date of the hearing in January 2011. This is an appropriate

consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997).

Plaintiff testified that her failure to receive medical treatment is due to an inability to afford care. (Tr. 17). A lack of sufficient financial resources to pursue treatment for a disabling impairment may be "justifiable cause" for such noncompliance. Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004). Before a lack of funds may excuse a failure to pursue treatment or obtain medication, however, there must be evidence that the claimant was denied medical treatment due to financial reasons. Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005). See also Murphy v. Sullivan, 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship in case in which there was no evidence that claimant had attempted to obtain low cost medical treatment or had been denied care because of inability to pay). Such evidence is lacking in the instant case. Plaintiff did not testify that she had attempted to receive care and was denied due to an inability to pay.

The ALJ also noted inconsistences in the record. For example, plaintiff reported to Dr. Burchett that she did not follow-up with Dr. Coyle because she could not afford the MRI he recommended. (Tr. 43, 286). The ALJ pointed out that the record reveals that plaintiff did undergo an MRI on June 6, 2007. (Tr. 43, 295). The ALJ also noted that there is no recommendation for further surgical intervention in Dr. Coyle's records despite plaintiff's testimony that Dr. Coyle recommended surgery. (Tr. 44, 19). Rather, Dr. Coyle observed plaintiff's symptoms for two months, during which time he prescribed Elavil, and then released plaintiff to return only as needed. (Tr. 295, 293).

- 16 -

Finally, the ALJ discussed plaintiff's daily activities. The ALJ noted that plaintiff indicated in her function report that she gets her boyfriend's children ready for school, watches the children play when they get home, and puts the children to bed; is independent with her personal care; prepares simple meals; cares for family pets; does light housework and laundry; drives; shops in stores; watches television and sits outside; handles her own finances; and visits with others in person and by telephone. (Tr. 45, 179-86). The ALJ stated that these activities are not consistent with the extent of plaintiff's allegedly disabling impairments and, as such, bear strongly upon her credibility. (Tr. 45). While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the claimant watched television, read, drove, and attended church in concluding that subjective complaints of pain were not credible). The undersigned finds that the ALJ properly considered plaintiff's daily activities as one factor that weighed against the credibility of her subjective complaints.

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not entirely

credible is supported by substantial evidence.

**2.     Vocational Expert Testimony**

Plaintiff contends that the ALJ's RFC determination is inconsistent with the questions he posed to the vocational expert at the administrative hearing. Plaintiff argues that, based on the hypothetical questions posed to the vocational expert, there would be no jobs plaintiff could perform.

Plaintiff's argument lacks merit. While the hypothetical questions posed to the vocational expert at the hearing contained more restrictive limitations based on plaintiff's subjective complaints, the ALJ did not include these limitations in his RFC. Rather, the ALJ found that the plaintiff had the RFC to perform the full range of light work. (Tr. 42). The ALJ was required to include only plaintiff's credible limitations in her RFC. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006).

"It is the ALJ's responsibility to determine claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of her limitations." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007). The ALJ's RFC determination is supported by substantial evidence. The ALJ performed a proper credibility analysis and found that plaintiff's subjective complaints of pain were not entirely credible. In determining plaintiff's RFC, the ALJ assigned significant weight to the opinion of the medical expert, Dr. Amusa, which he found was consistent with the record as a whole. (Tr. 44). As discussed above, plaintiff was released from the care of her surgeon in August 2007, at which time plaintiff's x-rays looked "very good," plaintiff had minimal complaints of back pain, excellent

strength, and no complaints of right lower extremity pain. (Tr. 293). The findings of the consultative orthopedist, Dr. Burchett, were unremarkable, noting no sign of muscle spasm or tenderness. (Tr. 16). Dr. Amusa pointed out that there was no sign of atrophy or decreased size in any of her muscles in her extremities, she was able to walk on her heels and toes, and her neurologic exam was unremarkable. (Id.). The evidence of record does not support the presence of limitations greater than those found by the ALJ.

At Step Four, after determining plaintiff's RFC, the ALJ found that plaintiff had no past relevant work. (Tr. 45) At Step Five, the burden then shifted to the Commissioner to produce evidence of some other type of substantial gainful employment plaintiff could perform given her RFC. See Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); 20 C.F.R. § 404.1520(f).

Generally, "[i]f a claimant has a nonexertional impairment, the Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence such as vocational testimony." McCoy v. Schweiker, 683 F.2d 1138, 1148 (8th Cir. 1982) (abrogated on other grounds). However, the Eighth Circuit has parsed out nuanced exceptions to this rule where "The ALJ finds, and the record supports the finding, that the nonexertional impairments do not *significantly* diminish the claimant's RFC to perform the full range of activities listed in the guidelines." Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012) (quoting Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993)) (emphasis in original).

The application of this exception is further determined by the specific nonexertional impairment being considered. Where the extent of the nonexertional limitation depends on the credibility of subjective testimony about pain, the ALJ may rely solely on the Guidelines under the

exception because pain is closely related to the claimant's exertional ability.  Brock, 674 F.3d at 1065 (citing Wheeler v. Sullivan, 888 F.2d 1233, 1238-89 (8th Cir. 1989)).

In this case, the ALJ applied the Guidelines to find that plaintiff was not disabled.  (Tr. 46).  The ALJ's application of the Guidelines was proper, based on his finding that plaintiff was capable of performing the full range of light work.  In making his RFC determination, the ALJ discounted the credibility of plaintiff's complaints of pain, and as discussed above, this conclusion was supported by substantial evidence on the record.

Thus, the ALJ's determination that plaintiff was not disabled is supported by substantial evidence.

## Conclusion

The undersigned finds that substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment.

Dated this 22nd day of February, 2013.

/s/ Lewis M. Blanton
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE